In the Matter of the Petition of ADELAIDE MILLS, as Trustee, etc.,
for Authority to Sell or Mortgage Certain Real Property within
the City of New York, Forming the Subject of a Trust Created
in and by the Last Will and Testament of RICHARD CROMWELL,
Deceased.

ADELAIDE MILLS, Trustee, etc., Appellant; WILLIAM ROSENWEIG,
MORRIS FRANKLIN and HERBERT C. PLASS, Respondents.

*Trust — trust property cannot be sold to pay off a mortgage thereon executed by con-
tingent remaindermen — a court of equity has no inherent power to direct the sale
or mortgaging of trust property.*

A testator devised certain property to trustees to hold the same during the lives
of two persons who were each to receive an annuity out of the rents of the
premises, the residue of the income being directed to be applied to the support
and education of the children of Richard Cromwell, a deceased son of the
testator.

Upon the death of the two annuitants the real estate and the accumulation of net
income were, as stated in the will, to " go and be divided in fee to and amongst
the children of my said son Richard, who shall be then living and the issue of
such as may be dead, the issue of such deceased children of my said son to
take the share of their deceased parents."

Before the death of the surviving annuitant the three children of Richard Crom-
well mortgaged their estate in remainder in the property to secure the pay-
ment of their individual bonds. Subsequently a substituted trustee obtained
an order from the court authorizing her to raise by mortgage or sale of the
premises a sum of money sufficient to pay the said mortgage, on which judg-
ment of foreclosure and sale had been obtained, on the ground that there was
no probability of a sale under such judgment realizing the full value of the
estate in remainder, and that a sale would be injurious to the mortgagors, and
thereafter the premises were sold pursuant to such order.

In proceedings taken to compel the purchasers at such sale to complete their
purchase,

*Held*, that the statute (§ 85, Real Prop. Law [Chap. 547 of 1896], as amended by
chap. 136 of 1897) did not authorize a sale to pay off the mortgage covering
the estate in remainder, where, as in the present case, the interest of the mort-
gagors was subject to be divested in case of their dying before the termination
of the precedent estate.

*Semble*, that there is no inherent power in a court of equity to interfere with trust
property by directing that it be mortgaged or sold, and that the right to do so
must be predicated upon some statutory authority.

APPEAL by the petitioner, Adelaide Mills, trustee, etc., from an
order of the Supreme Court, made at the New York Special Term

and entered in the office of the clerk of the county of New York on the 11th day of February, 1898, denying the petitioner's motion for an order compelling the purchasers at a sale to complete their purchase pursuant to the terms of sale.

One Richard Cromwell died seized in fee of the premises in question, leaving a last will and a codicil thereto, by which the said premises were devised to trustees to hold and keep the same invested during the lives of Anna Merritt and Elizabeth R. Cromwell, and meanwhile to pay to each of them an annuity of $500 out of the rents of said premises, the residue of the income to be applied to the support and education of the children of Richard Cromwell, a deceased son of the testator. Upon the death of the two annuitants, the real estate and the accumulations of net income were to " go and be divided in fee to and amongst the children of my said son Richard, who shall be then living, and the issue of such as may be dead, the issue of such deceased children of my said son to take the share of their deceased parents." The two trustees have died, and the petitioner, who is a daughter of the testator's deceased son Richard, was substituted in their stead as trustee, and is at present in possession of the property. The other persons interested are Elizabeth R. Cromwell, who is entitled to an annuity of $500; Frank Cromwell, Albert Cromwell and Adelaide Mills, comprising all the children of the testator's deceased son Richard, the five infant children of Albert Cromwell, and the four infant children of Adelaide Mills. Frank Cromwell is unmarried and without issue. In 1888, and subsequent thereto, certain indentures were executed and delivered by Mrs. Mills and her brothers Frank and Albert, whereby the remainder was mortgaged as security for the payment of their individual bonds. Suit was subsequently instituted to foreclose these mortgages and prosecuted to judgment, but no sale thereunder has been had. The amount due on such judgments in foreclosure in May, 1897, was $38,291.09. The premises yield a gross annual rental of about $3,500.

In a proceeding instituted by the petitioner, an order was made by this court authorizing her to raise the sum of $40,000 by the mortgage or sale of said real property for the purpose of paying said judgment of foreclosure and sale, for the reason that there is no probability of a sale under such judgment realizing anything like

the value of said remainder, and that a sale thereunder would be injurious to the remaindermen who had mortgaged their interest, and would result in deficiency judgments. In addition to the judgment of foreclosure, the mortgagee held sundry policies of life insurance as collateral. The matter having been referred, the referee reported in favor of granting the prayer of the petition. Thereafter the report was confirmed and an order entered, and the premises were sold at public auction to the respondents for $54,600. They refused to complete their purchase, upon the ground that the court was without authority to make the order of sale. Thereupon a motion was made to compel them to take title, which was denied, and it is from the latter order that this appeal is taken.

*W. K. Barton*, for the appellant.

*Julius J. Frank*, for the respondents.

O'BRIEN, J.:

The petitioner has proceeded under chapter 136 of the Laws of 1897, which amends section 85 of the Real Property Law (Chap. 547, Laws of 1896) so as to read as follows:

"Sec. 85. **When trustee may convey trust property.**— If the trust is expressed in the instrument creating the estate, every sale, conveyance or other act of the trustee in contravention of the trust, except as provided in this section, shall be absolutely void. The Supreme Court may, by order, on such terms and conditions as seem just and proper, authorize any such trustee to mortgage or sell such real property or any part thereof whenever it appears to the satisfaction of the court that said real property, or some portion thereof, has become so unproductive that it is for the best interest of such estate, or that it is necessary or for the benefit of the estate to raise funds for the purpose of preserving it by paying off incumbrances or of improving it by erecting buildings or making other improvements, or that for other peculiar reasons, or on account of other peculiar circumstances, it is for the best interest of said estate, and whenever the interest of the trust estate in any real property is an undivided part or share thereof, the same may be sold if it shall appear to the court to be for the best interest of such estate."

Section 87 of the Real Property Law, as amended by the same chapter, provides, among other things, that the final order in such a proceeding shall be valid and effectual against all minors or persons not in being, interested in the trust or having estates vested or contingent in reversion or remainder in the real property affected. In regard to this section (87) all that need be said is, that if the proceeding is properly initiated and the order of sale is authorized, then, by force of this section, it becomes effective in cutting off the interests of the persons therein enumerated.

In the absence of any inherent power in a court of equity to interfere with trust property by directing that it be mortgaged or sold, the right to do so must be predicated upon some statute. The real question here presented, therefore, is as to whether the reasons stated in the petition are such as, by force of section 85 of the Real Property Law, would authorize the court to direct a sale of the trust property. It is not claimed that the property is unproductive, or that it is necessary " to raise funds for the purpose of preserving it by paying off incumbrances or of improving it by erecting buildings," but it is insisted that on account of the " peculiar reasons " or " peculiar circumstances, it is for the best interest of said estate" that the property should be sold. These reasons and circumstances are not undisputed. Under the will, as correctly held by the learned judge at Special Term, " those children of the testator's deceased son Richard who are living at the termination of the trust are entitled to share in the property. They take a vested remainder, subject, however, to be defeated by their decease before the termination of the particular estate, and, in that event, there is a substitutionary gift in favor of the issue of any such children who may have so died, such issue taking as purchasers under the will the share which the deceased parent would otherwise have had."

The will contains no power to sell or mortgage the premises in question. Before the termination of the life estate and before it could be determined who would succeed to the possession of the property, the three remaindermen whose estates are subject to be divested in favor of their children in the event of their dying before the termination of the trust estate, have mortgaged their contingent interests. The purpose of the sale is to pay off these mortgages, in order, as they state, to prevent a sale under foreclosure for

an inadequate sum and the rendering of deficiency judgments against them. If the order for the sale and the appropriation of the money as therein made were carried out, about $40,000 of the trust estate would go to the mortgagee of those contingent remaindermen, and there would be left for those who might ultimately succeed to the trust estate the balance between that sum and the $54,600 for which the premises sold at public auction. Assuming as is not only possible but probable, that one of the persons whose interest was thus mortgaged should die before the life tenant, the effect of this would be to divest the one so dying of all interest in the property and, by the terms of the will, confer upon his or her children, as purchasers under the will, one-third of the trust estate, and such persons, instead of obtaining, as intended by the language of the testator, one-third of $54,600, would be entitled only to one-third of about $14,000, because that is all there would be left of the trust property after paying off the mortgages. Such a result to infants interested in a trust estate, without any fault on their part to bring it about, would as a first impression shock one's sense of justice. And this impression is strengthened when we conclude, as we must upon the facts here appearing, that the contemplated sale could in no way result in any benefit to, but rather in the destruction of, the trust estate, for the purpose of discharging mortgages which individuals had placed upon their own interests for their own benefit, and by their own voluntary act, and to escape the consequences of which they insist that the trust estate should be sacrificed. In effect this would be taking the property of infants, for which they are in no way beholden to their parents, to pay off the parents' debts. We do not think the statute was ever intended to effect any such purpose; on the contrary, we think it was only for the purpose of protecting and preserving the trust estate that the power was given to the court to authorize the sale or mortgaging of trust property. That it would be advantageous to the parents, who are remaindermen, may be assumed, but there is nothing in the language of the act from which the inference can be drawn that the peculiar reasons or circumstances, in addition to the others enumerated, which would justify action by the court under section 85 of the act, were advantages or disadvantages to persons who might have a contingent interest in the trust property. The purpose sought to be accom-

plished by a sale or mortgage must be a benefit or advantage to the trust estate.

The enforcement of the foreclosure judgment will not injure the trust estate or the beneficiaries of the same. The facts found by the referee show that the purpose to be subserved is merely the relief of the remaindermen from the consequences of their own act. But they should not be permitted, nor have they the right in any way, to affect the trust estate or the beneficiaries of the trust. The advantage to be gained from compelling an application of the moneys produced by a sale to the payment of the mortgages would be to relieve such remaindermen; and it is clear that, even if the will had conferred a power of sale upon the trustees, it would not have been exercised for any such purpose. The avowed purpose of the sale is to provide funds to pay the debts of persons who, while temporarily interested in the estate, may become divested thereof by their decease before the falling in of the remainder. The court is thus asked to sanction a contravention of the trust and to permit the trustee to incur a liability to remaindermen whose identity is not yet established, which after the sale confessedly she would be without the means to discharge. It is too plain for argument and needs no further discussion that such peculiar facts and circumstances fail to show that the intended sale "is for the best interest of such estate."

We think the order of sale was unauthorized and that the disposition made by the learned judge below was right and that the order appealed from should be affirmed, with ten dollars costs and disbursements.

VAN BRUNT, P. J., concurred; PATTERSON, INGRAHAM and McLAUGHLIN, JJ., concurred in result.

Order affirmed, with ten dollars costs and disbursements.